UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH G.[1]

                  **Plaintiff,**

    **v.**

                                **Civil Action 2:25-cv-718**
                                **Judge Douglas R. Cole**

**COMMISSIONER OF SOCIAL**          **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

                  **Defendant.**

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Joseph G. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff filed his SSI application in 2022, alleging that he became disabled beginning July 16, 2012. (R. at 217–23.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on November

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

29, 2023, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 124–49.) A vocational expert ("VE") also appeared and testified. On May 7, 2024, the ALJ issued an unfavorable determination, which became final on April 25, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 15–34, 1–7.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ's residual functional capacity ("RFC")[2] determination is not supported by substantial because the ALJ erred: 1) when assessing Plaintiff's subjective symptoms (*fka*, a credibility determination), and 2) by failing to include in his RFC an absence or time-off task limit. (Pl.'s Statement of Errors 11–14, ECF No. 8.) The undersigned concludes that Plaintiff's contentions of error lack merit.

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

## II.    THE ALJ'S DECISION

The ALJ issued the unfavorable determination on May 7, 2024. (R. at 15–34.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his June 18, 2022 application date. (*Id*. at 20.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: bipolar/depressive disorder; post-traumatic stress disorder; attention deficit hyperactivity disorder; cannabis dependence; degenerative joint disease of the left foot with tarsal coalition; and obesity. (*Id*. at 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 21.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can occasionally push, pull or use foot controls with the left lower extremity; can occasionally crawl and climb ladders, ropes or scaffolds; can perform simple tasks without a production rate pace; can adapt to occasional changes; can interact occasionally with others on matters limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution.

(*Id*. at 23.) At step four, the ALJ relied on the VE's testimony to determine that Plaintiff could perform his past relevant work as a cleaner. (*Id*. at 28.) The ALJ alternatively relied on the VE's testimony at step five to determine that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative jobs of stores laborer, hand packager, and kitchen helper. (*Id*. at 29.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 30.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

4

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible error by improperly assessing his subjective symptoms and by failing to include limits in his RFC for absences or time off task. (Pl.'s Statement of Errors 11–14, ECF No. 14.) The undersigned considers both contentions in turn and finds that neither has merit.

### A.    Subjective Symptom Assessment

Plaintiff first contends that the ALJ erred when assessing his subjective symptoms, particularly those related to his left leg impairments. (*Id*. at 11–12.) The undersigned is not persuaded.

### 1.      The Two-Step Process and Relevant Factors

When a claimant alleges disabling symptoms, an ALJ must follow a two-step process to evaluate them. *See* 20 C.F.R. §§ 404.1529, 416.929; *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at \*10 (Oct. 25, 2017). First, an ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must consider all available evidence from medical and nonmedical sources, including medical opinions. *Id.* In addition, SSR 16-3p[4] sets forth factors that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996), which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at \*11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 96-7p). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all these factors, the ALJ should show that he or she considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

Of note, an ALJ will consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* at *9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he or she both considers and explains the plaintiff's possible reasons for that failure. *Id*. at *10; *Dooley,* 656 F. App'x at 119 (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

An ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16-3p, 2017 WL 5180304 at, *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

### 2.     The ALJ's Assessment

The undersigned finds no reversible error in the ALJ's subjective symptom assessment.

The ALJ began by setting forth the two-part process described above. (R. at 23–24.) She also

summarized Plaintiff's testimony about his left foot impairments, writing as follows:

> The claimant testified that he is unable to work . . . .  It is hard to stand on his feet
> for a long time and lift weight. He testified he has pain in his left ankle and leg from
> a car accident many years ago. He testified he fractured his leg and broke his femur.
> He has hardware in his leg. He testified he had a left heel reconstruction with a
> metal plate and screws in the left foot. He testified he has custom orthotics for his
> feet, so he has special shoes.

(*Id*. at 24.)

The ALJ then determined that she could not fully credit Plaintiff's subjective symptoms

explaining as follows:

> As for the claimant's statements about the intensity, persistence, and limiting
> effects of his or her symptoms, they are inconsistent with his treatment records, the
> objective medical findings therein, and the other factors we consider under SSR 16-
> 3p.
>
> Regarding the claimant's physical complaints, his testimony that he could not be
> on his feet for lengthy periods due to pain, is not consistent with the record. Remote
> x-rays of the left foot in July 2020 revealed an acute to subacute transverse fracture
> of the base of the 5th metatarsal without significant fracture displacement, and
> intact hardware from a prior tarsal coalition, and diffuse osseous demineralization
> (Exhibit 3F/10). Surgical history is notable for hammertoe repair of the 2nd, 3rd,
> 4th, and 5th toes in December 2015 (Exhibit 7F/8). Records document little as far
> as complaints thereafter until March 2022 when he presented with some increasing
> pain and swelling in his foot. He was noted to have orthotics. Examination revealed
> intact vascular status, mild ankle swelling, slight pronation, no inversion or
> eversion at the subtalar joint, and mild palpable tenderness across the ankle and
> medial foot (Exhibit 8F/16). X-rays of the left foot revealed good bony healing of
> the fracture of the base of the left 5th metatarsal bone, since his prior x-ray in 2020.
> No acute osseous abnormalities were seen. Prior calcaneal open reduction internal
> fixation was again noted, with moderate degenerative changes in the midfoot
> similar to his last x-ray. The left 2nd, 3rd, and 4th PIP joints were absent, which
> was possibly chronic ankylosis or congenital (Exhibit 3F/24). He was prescribed
> meloxicam. He was not seen again for complaints until early 2023. Primary care
> records in late 2022 note a BMI range of 32.0- 32.9 (Exhibit 6F/7). As of January
> 2023, he returned to podiatry with complaints of trouble finding shoes in which his

8

orthotics would fit. He reported he was on his feet a lot and had some redness and swelling to his left leg (Exhibit 8F/9). However, as of February 2023 podiatry follow-up, he reported doing well with the tarsal coalition, reporting meloxicam helped a lot. "Minimal" pain in the left foot was noted. (8f/7-8). He still had restricted range of motion secondary to tarsal coalition. He was not wearing his orthotics due to difficulty finding a good shoe (Exhibit 8F/8). Records lack any subsequent treatment for foot pain or limitations.

(*Id*. at 24–25.) The ALJ then summarized her analysis of Plaintiff's foot and ankle related symptoms, writing as follows:

In summary the claimant's treatment for his physical impairments is limited, with few complaints of foot/ankle pain. He was only seen once March 2022 then twice in January February 2023. While the record did show tarsal coalition, it also indicated that this could be congenital fusion and, when last seen, he was doing well with minimal pain. His gait was normal at the vast majority of his exams. Imaging showed some mild to moderate degenerative changes but also routine healing of his remote fracture. His course of treatment was minimal and reported to be successful. He reported significant daily activities including playing sports (Exhibit 1F/61). However, given the issues with the left foot and worsening obesity, I limited him to a range of medium work with limited pushing/pulling/foot controls with the left foot, and limiting crawling and climbing at heights.

(*Id*. at 26–27.) As this detailed, multi-part discussion demonstrates, the ALJ determined that Plaintiff's statements about the disabling nature of his left foot symptoms were unpersuasive for a number of reasons, including that they were inconsistent with evidence of his treatment history, objective findings, treatment effectiveness, and his daily activities. Substantial evidence supports that determination.

### a. *History of Limited Treatment*

First, the ALJ determined that Plaintiff's statements were inconsistent with his limited treatment. (*Id*. at 24, 26–27.) Efforts to obtain treatment, or a lack of such efforts, is a proper consideration under SSR 16-3p. 2017 WL 5180304, at *9–10. *See also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek

examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.")

The ALJ's reliance on Plaintiff's limited treatment was also substantially supported by the record. As the ALJ explained, despite prior surgeries, Plaintiff appears to have sought treatment for foot or ankle pain only three times during the relevant period and stopped seeking treatment altogether after February 2023. (R. at 26–27, 596–97, 590, 588–89, 25.) When he did seek treatment at that time, his medication was continued and he was advised to continue seeking a shoe that would be more compatible with his orthotic, including trying a hiking boot instead of a basketball shoe. (*Id*. at 589.)

Plaintiff does not contest that he only sought treatment for his foot and ankle pain three times, or that he did not seek treatment after February 2023. (Pl.'s Statement of Errors 12, ECF No. 14.) Instead, he complains that "it is unclear what, if any, additional treatments would be available as [ . . . ] Plaintiff had already undergone surgical intervention and his options for pain control are limited given his history of substance abuse." (*Id*.) But Plaintiff does not point to evidence that a medical professional had determined that he had exhausted all treatment options, including non-pharmacological options, or that he had been advised that his options were limited, or that further care would not have been effective. As the ALJ accurately explained, the record reflects that Plaintiff did not aggressively pursue treatment during the relevant period. And that was a proper consideration. *See McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."). The Court declines to speculate about the types of treatments that may or may not have been available had Plaintiff continued to seek medical help.

### b. Objective Evidence

The ALJ additionally determined that Plaintiff's statements were unpersuasive because they were inconsistent with objective evidence. (*Id*. at 24, 27.) That consideration was proper. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) (explaining that "[a]n ALJ must consider how closely a claimant's self-reported symptoms line up with objective medical evidence and other evidence in the record") *See also*, SSR 16-3p, 2017 WL 5180304, at *5 (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . .").

The ALS's reliance on objective evidence was also substantially supported by the record. As the ALJ correctly noted, during a March 2022 examination, Plaintiff's left foot was vascularly intact, with mild ankle swelling and slight pronation but no inversion or eversion at the subtalar joint. (R. at 24, 596–97.) Plaintiff also had only mild palpable tenderness across the ankle and medial foot. (*Id*. at 24, 597.) An x-ray that same day showed good healing of a previous fracture of the fifth metatarsal bone with no acute osseus abnormalities and only some moderate degenerative changes throughout the midfoot. (*Id*. at 24, 483–84.)

The ALJ also correctly noted that although Plaintiff had some edema in his feet and erythema in his lower legs in January 2023, a February 2023 examination found that despite restricted motion secondary to his tarsal condition, he had only minimal pain in his left foot. (*Id*. at 24–25, 590, 588.) The ALJ also explained that Plaintiff's gait was regularly found to be normal during examinations. (*Id*. at 27.) And indeed, Plaintiff's gait was routinely described by providers as normal, stable, or unremarkable. (*Id*. at 376, 452, 496, 501, 529, 549, 608, 648, 706.)

11

Plaintiff does not challenge the ALJ's reliance on this objective evidence. Instead, he cites a January 2023 examination note and complains that the ALJ failed "to consider [his provider's] examination where he found edema in both feet and legs with some erythema in the lower legs." (Pl.'s Statement of Errors 12, ECF No. 14 (citing R. at 591).) But an ALJ's substantially supported determination will not be disturbed even if other evidence "would have supported an opposite result." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Moreover, the ALJ cited notes from that same January 2023 examination and elsewhere indicated that because of Plaintiff's left leg issues and worsening obesity, she included in Plaintiff's RFC limits for pushing or pulling with the left foot and for crawling and climbing at heights. (*Id.* at 27, 24–25, (citing R. at 590).) The ALJ's decision, therefore, reflects consideration of that evidence.

### c.      *Treatment Effectiveness*

The ALJ further determined that Plaintiff's statements were unpersuasive because some of his symptoms improved with treatment. (*Id.* at 25, 27.) Treatment effectiveness was a proper consideration under SSR 16-3p. 2017 WL 5180304, at *9–10.

The ALJ's reliance on treatment effectiveness was also supported by substantial evidence. Plaintiff was prescribed Meloxicam in March 2022 for foot pain and swelling. (R. at 597.) When he returned to podiatry again ten months later for foot pain, he was put on Meloxicam again because "[h]e did well with that last year." (*Id.* at 591.) During a follow-up visit in February 2023, Plaintiff was reportedly "doing well" with his "tarsal condition" and "the meloxicam helped a lot." (*Id.* at 588.)

Plaintiff apparently challenges the ALJ's characterization of his treatment as effective because even though Meloxicam made a significant difference, he still had restricted motion

secondary to his tarsal condition. (Pl.'s Statement of Errors 12, ECF No. 14.) But a treatment that mitigates symptoms can be effective even if it does not eliminate their cause. Plaintiff also notes that his provider did not want to keep him on this medication long term. (Pl.'s Statement of Errors 12, ECF No. 14.) But that does not undermine the ALJ's explanation that the medication was effective during the period it was prescribed. Moreover, Plaintiff did not return for treatment after his Meloxicam would be renewed despite being advised to follow up as needed. (R. at 589.)

### d.  Daily Activities

Finally, the ALJ determined that Plaintiff's statements were unpersuasive because they were inconsistent with his activities of daily living. (*Id.* at 27.) That was a proper factor to consider under SSR 16-3p. 2017 WL 5180304, at *7. *See also Turner v. Comm'r of Soc. Sec.*, No. 20-6422, 2021 WL 6275633, at *3 (6th Cir. Sept. 24, 2021) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. Oct. 15, 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.")).

The ALJ's description of Plaintiff's daily activities was also supported by substantial evidence. Elsewhere in the determination, the ALJ described Plaintiff's activities in detail, writing as follows:

> I considered the claimant's avidities (*sic*) of daily living. The claimant reported having a good relationship with a girlfriend (Exhibit 1F/47, 61), playing sports, spending time with his nieces and nephews, enjoying sports and music and time with family (Exhibit 1F/63). He reported helping his brother with roofing projects (Exhibit 5F/23), performing normal daily activities, enjoying time with family, and performing self-care (Exhibit 5F/26), as well as trying to help his dad when he was sick (Exhibit 14F/36). He reported mowing grass and watching TV (Exhibit 5F/26). He reported sleeping well and feeling rested. He testified he spends time talking with family and friends. He watches sports. He goes to his nieces and nephews' activities. He prepares his own meals and does curb pick up shopping. He can tend to his personal care.

13

(R. at 26.) The ALJ's summary of Plaintiff's activities accurately reflects evidence in the record. (*Id*. at 359, 369, 528, 531, 734, 736, 136–37.)

Plaintiff nevertheless contends that the ALJ's summary mischaracterizes his daily activities because he reported to a provider that his hobbies included playing sports and spending time with his nieces and nephews, but that he had lost interest in his hobbies, and he clarified at the hearing that he enjoyed watching sports, not that he played sports. (Pl.'s Statement of Errors 12, ECF No. 12.) But even if Plaintiff no longer played sports, he still reportedly engaged in a variety of other activities, including, for instance, mowing grass and helping his brother with roofing projects. (R. at 531, 528.) And these activities supported the ALJ's conclusion.

In sum, the ALJ provided a detailed and supported explanation for her assessment of Plaintiff's subjective symptoms, including that his disabling allegations were inconsistent with his limited treatment history, objective evidence, treatment effectiveness, and daily activities. Plaintiff's first contention of error, therefore, lacks merit.

**B.      Absences / Time-Off-Task Limits**

Plaintiff also appears to contend, in cursory fashion, that the ALJ erred by failing to include absenteeism or time off-task limits in his RFC and that this was not harmless error given the VE's testimony that such limits would be work preclusive. (Pl.'s Statement of Errors 13–14, ECF No. 14.) Specifically, Plaintiff contends that he consistently pursued mental health treatment during the relevant period and would need absences or a time-off-task limit to continue doing so. (*Id*.)

But here, the ALJ expressly considered Plaintiff's course of mental health treatment and determined that it was inconsistent with his disabling allegations, in part, because it remained "routine and conservative." (R. a 26.) Although the ALJ could have addressed the issue more

14

directly, the undersigned is not persuaded that the ALJ failed to consider the frequency of Plaintiff's mental health treatment when she formulated his RFC.

In any event, when considering an ALJ's alleged failure to consider a plaintiff's absenteeism when assessing his or her RFC, this Court has held that "'evidence of frequent medical appointments alone is not enough' and that there must also be 'evidence such as a medical source opinion about the likelihood of absenteeism caused by a claimant's impairments and the need for treatment during working hours.'" *Christina M. K. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1957, 2022 WL 4545249, at *8 (S.D. Ohio Sept. 29, 2022) (quoting *Swafford v. Comm'r of Soc. Sec.*, No. 1:12cv19, 2013 WL 1196590, at *1 (S.D. Ohio March 25, 2013)).

Plaintiff identifies no such evidence here. He does not point to an opined absence or off-task limit from a medical source or a state agency reviewer. Nor does he point to any other evidence, including, for instance, evidence of repeated or lengthy inpatient mental health hospitalizations. In short, he has not met his burden of demonstrating that the RFC the ALJ assessed was not supported by substantial evidence.

## V. RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo*

15

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


**IT IS SO ORDERED.**


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE