**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOSEPH G.,**[1]

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 2:25-cv-718**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Vascura**

**OPINION AND ORDER**

The Magistrate Judge's June 2, 2026, Report and Recommendation (R&R, Doc. 16), advises this Court to affirm the Commissioner of Social Security's decision denying Plaintiff Joseph G. supplemental security income (SSI). For the reasons below, the Court **OVERRULES** Plaintiff's Objections (Doc. 17), **ADOPTS** the R&R (Doc. 16), and **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

Plaintiff applied for supplemental security income in 2022, alleging that he became disabled beginning around July 16, 2012. (Doc. 16, #1075). Social Security Administration (SSA) personnel denied that application, both initially and upon reconsideration. (*Id.*). Plaintiff then challenged that decision before an SSA Administrative Law Judge (ALJ), who presided over a telephone hearing at which Plaintiff was represented by counsel. (*Id.* at #1075–76). Plaintiff testified, as did a

[1] Due to privacy concerns, this Court refers to social security claimants only by their first names and last initials. *See* S.D. Ohio Gen. Order 22-01.

vocational expert. (*Id.*). The ALJ issued an unfavorable decision on May 7, 2024. (*Id.*). That decision became final on April 25, 2025, when the SSA Appeals Council declined review. (*Id.*). So the substance of the ALJ's decision is what provides the basis for review here.

In that decision, the ALJ employed the five-step "sequential evaluation process" that determines whether a Social Security claimant is disabled as the Social Security Act uses that term. (*Id.* at #1077 & n.3 (citations omitted)). Those factors direct ALJs to consider whether: (1) the claimant is engaged in substantial gainful activity, (2) the claimant suffers from one or more severe impairments, (3) the claimant's severe impairments, alone or in combination, meet or equal the criteria of impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R., Subpart P, Appendix 1; (4) the claimant can perform his relevant past work, considering the claimant's residual functional capacity; and (5) the claimant can perform other work available in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1520(a)(4); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step one, the ALJ found that Plaintiff had not engaged in substantially gainful activity since his June 18, 2022, application date. (Doc. 16, #1077). At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar/depressive disorder; post-traumatic stress disorder; attention deficit hyperactivity disorder; cannabis dependence disorder; degenerative joint disease of the left foot with tarsal coalition; and obesity. (*Id.*). At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*). At step four, the ALJ laid out Plaintiff's Residual Functional Capacity (RFC). (*Id.* at #1078). In doing so, the ALJ relied on the vocational expert's testimony to determine that Plaintiff has the capacity to perform medium work as defined in 20 C.F.R. § 416.967(c), including the capacity to perform his past relevant work as a cleaner. (*Id.*). Finally, at step five, the ALJ determined that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a "stores laborer, hand packager, and kitchen helper." (*Id.*). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act during the relevant time frame. (*Id.*).

Plaintiff initiated the instant case on June 30, 2025, (*see* Doc. 5), and filed his Statement of Specific Errors (Doc. 14) seven months later. In his statement, Plaintiff argues that the ALJ erred when assessing his subjective symptoms, particularly those related to his left leg impairments. (*Id.* at #1057–58). According to Plaintiff, the ALJ's decision was not based on "substantial evidence." (*Id.*). In short, Plaintiff argues that the ALJ was wrong in deciding that his physical conditions were not serious enough to warrant SSI.

Expanding on that, Plaintiff explains that under 20 C.F.R. § 416.929, "the ALJ is required to consider factors relevant to his symptoms, such as pain, including daily activities, precipitating and aggravating factors, treatment other than medication, and any measures used to relieve pain and other symptoms." (Doc. 14, #1058–59).

But Plaintiff claims the ALJ analyzed his reported "daily activities" incorrectly. (*Id.* at #1058). He says that the ALJ found that Plaintiff had reported "significant daily activities including playing sports," and used that to determine that he possessed the ability to perform medium work. (*Id.* (quoting Doc. 7-2, #50)). Plaintiff argues that in doing so, the ALJ erred, and misunderstood the record, because while Plaintiff did report that he liked to play sports as a hobby, he also noted that he had lost interest in hobbies due to his condition and later clarified that he generally spent his time *watching* sports. (*Id.* (Doc. 7-2, #160)). So, Plaintiff argues that the ALJ's determination was not based on substantial evidence because Plaintiff's credible testimony indicated that he spent his days watching sports and that he could not be on his feet for long periods without pain. (*Id.* at #1059).

Plaintiff further contends that the ALJ erred by failing to include potential future absences and time-off task limits caused by Plaintiff's "largely successful" ongoing mental health and substance abuse disorder treatment in the RFC determination. (*Id.* at #1059–60).

Based on all that, Plaintiff says "[t]here is a great deal of evidence that supports a finding of ongoing disability"—contrary to what the ALJ decided. (*Id.* at #1060).

Turn now to the R&R. The Magistrate Judge found that Plaintiff failed to show that the ALJ erred. (Doc. 16, #1079). In the R&R, the Magistrate Judge points out that the ALJ followed the correct two-part process for evaluating alleged disabling symptoms. (*Id.* at #1080–82). Under that process, an ALJ must first determine

whether there is an underlying medical impairment that could be reasonably expected to produce a claimant's symptoms. (*Id.* at #1080 (citing 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1))). Then, the ALJ must evaluate those symptoms to determine how much they actually limit the claimant's capacity for work. (*Id.*).

The Magistrate Judge explained that in applying that process to Plaintiff's testimony, the ALJ found that she could not fully credit the claimed symptoms because they were inconsistent with Plaintiff's treatment records and the objective medical findings. (*Id.* at #1082). And after examining that reasoning, the Magistrate Judge determined that the ALJ's conclusion was supported by substantial evidence. (*Id.* at #1088). Nor was the Magistrate Judge persuaded that the ALJ failed to include Plaintiff's mental health treatment in the RFC. (*Id.* at #1088–89). So, the Magistrate Judge recommended the Court overrule Plaintiff's statement of errors and affirm the Commissioner of Social Security's decision. (*Id.* at #1089).

Plaintiff timely filed objections. (Doc. 17). He first argues that the Magistrate Judge was incorrect in finding the ALJ's determination to be based on substantial evidence, and then argues that the ALJ did not follow the SSA's own rules when it declined to include potential treatment absences in Plaintiff's RFC. (*Id.*).

The Commissioner responded to Plaintiff's objections. (Doc. 18). There, the Commissioner defended the R&R and the ALJ's decision, resting on the R&R and the Commissioner's previous merits brief, (Doc. 15). (Doc. 18).

With that, the matter is ripe for review.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

But that is not the only relevant standard of review. In this case, the Magistrate Judge reviewed a decision by a Social Security Administration ALJ that the Commissioner of the SSA adopted. In that setting, courts are "limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ealy*, 594 F.3d at 512 (quotation omitted). So long as substantial evidence supports the Commissioner's conclusion, the court must affirm, even if substantial evidence in the record would also support a different conclusion. *Id.* That said, even if substantial evidence supports the ALJ's decision, the court cannot affirm if "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Putting all that together, when a party specifically objects, this Court reviews that portion of the R&R de novo to assess whether (1) the Magistrate Judge correctly determined that the ALJ's decision applied the correct legal standards (including the SSA's own regulations), and (2) substantial evidence supported the ALJ's decision.

**LAW AND ANALYSIS**

For Supplemental Security Income purposes, an individual is disabled if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). As noted above, the SSA developed a five-step analysis to tell whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant must not be gainfully employed (step one) and must have one or more severe, medically determinable physical or mental impairments (step two). *See id.* The SSA considers some impairments, listed in a regulatory appendix, as so severe they automatically entitle a claimant to benefits (step three). *See id.*

If, as here, the list does not contain the claimant's impairment or its equivalent, the SSA then considers whether the claimant can still work (steps four and five). *See id.* That is, the SSA assesses the claimant's "residual functional capacity," or RFC, often relying on medical and vocational experts to assist in that determination. *See id.* Then, based on the claimant's RFC, age, education, and work

experience, the SSA asks whether the claimant can either continue performing the work they had done before, or perform some other job or jobs that exist in significant numbers in the national economy. *See id.* If the claimant falls into either bucket, the SSA will find the claimant not disabled. *See id.* Otherwise, the claimant is disabled. *See id.*

In his Objections to the R&R, Plaintiff largely renews his objections to the ALJ's determination of his RFC. He claims that the ALJ's (and Magistrate Judge's) finding that he could perform "medium work" misunderstood the record about his "daily activities" and was thus not based on substantial evidence. (Doc. 17, #1093–94). But he clarifies his second argument a bit, arguing that the ALJ erred by failing to consider his treatment as part of the RFC despite SSA regulations listing it as a factor to be considered. (*Id.* at #1094). So the Court reviews those objections de novo. But after considering the issues anew, the Court agrees with the Magistrate Judge.

When a claimant alleges disabling symptoms, an ALJ must follow a two-step process to evaluate them. 20 C.F.R. § 416.929; SSR 16-3p, 82 Fed. Reg. 49462, 49463–65 (Oct. 25, 2017). Under that process, an ALJ must first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must … evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 416.929(c)(1). The record is clear that the ALJ laid out and followed that process. (Doc. 7-2, #46–47). At step one, the ALJ found that Plaintiff's

impairments could reasonably be expected to cause at least some of the alleged symptoms. (*Id.* at #47). But turning to step two, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical, and other, evidence in the record. (*Id.* at #47). That was because the ALJ found that "the record does not disclose sufficient objective medical and other evidence to substantiate the severity of the symptoms and degree of functional limitations alleged by the claimant." (*Id.* at #49). That is at least in part a credibility determination. The ALJ weighed the credibility of Plaintiff's testimony against the weight of the other evidence and sided against Plaintiff. Understandably, Plaintiff disagrees and so brings this case. But overturning the ALJ's evaluation of the evidence at this stage is an uphill climb for Plaintiff; remember, this Court must affirm the Commissioner's decision so long as there is substantial evidence for it, even if the evidence might also support a different conclusion. *Ealy*, 594 F.3d at 512. And the medical evidence on which the ALJ relied provides substantial evidence for her findings.

Plaintiff's argument for why he cannot in fact perform "medium work" as the ALJ determined stems largely from his claim that his "pain in his left ankle and leg limited how long he could be on his feet." (Doc. 14, #1058). "Medium work," Plaintiff notes, typically requires being "on one's feet for the majority of the workday." (*Id.* (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983))). But Plaintiff's primary evidence for that pain is his own testimony, which he says the ALJ erred by not honoring, or by misinterpreting—especially as it relates to Plaintiff's daily activities.

(Doc. 14, #1058). The problem, though, is that this Court reviews the ALJ's decision only for substantial evidence. So, even if the Court were to conclude the ALJ should have given greater credibility to Plaintiff's self-reporting, or that she had misinterpreted some of his statements, that would still not sustain a claim unless there was an *absence* of any other substantial evidence for the ALJ's decision.

And here, the ALJ relied on quite a bit of other evidence in the record to determine that Plaintiff was able to perform medium work. For instance, the ALJ pointed to the fact that Plaintiff only sought treatment for foot or ankle pain three times during the relevant time period and was not "aggressively seeking" treatment. (Doc. 7-2, #49–50); *see McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (Table) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."). The ALJ also relied on medical evidence suggesting that the Plaintiff's left foot was in relatively good shape—x-rays showed his previous fracture had healed and an examination revealed intact vascular status and only mild ankle swelling. (Doc. 7-2, #47). And the ALJ considered evidence that Plaintiff's treatment of the issue with the anti-inflammatory drug Meloxicam had been effective, with his foot and ankle responding well. (*Id.* at #48). So, the ALJ did not rely only on her assessment of Plaintiff's credibility. Rather, she considered the various medical evidence, of which there was a substantial amount, alongside Plaintiff's testimony.

In his appeal here, Plaintiff does not attack that objective evidence. Instead, Plaintiff focuses on a narrower argument[2]—that the ALJ improperly relied on his reporting of playing sports as a hobby when considering his daily activities, which is one of the RFC factors. (Doc. 14, #1058–59). But again, even assuming the ALJ erred in doing so, the ALJ's decision is still supported by other substantial evidence: the medical record. So the Court finds that this claim fails.

Nor is the Court persuaded by Plaintiff's claim that the ALJ violated SSA regulations by failing to consider Plaintiff's potential future work absences from his mental health treatment in formulating Plaintiff's RFC. For one, the record is clear that the ALJ *did* consider Plaintiff's mental health status as part of the process. (Doc. 7-2, #48–49 (discussing Plaintiff's "mental impairments," treatment, and diagnoses)). Plaintiff's only argument to the contrary appears to be that, because the ALJ's RFC determination makes no allowances for treatment-related absences, the ALJ must not have considered that treatment as a factor. (Doc. 17, #1094). While proving a negative may be difficult, an unfavorable determination alone cannot support a finding that the ALJ neglected to consider potentially favorable evidence. So the Court is unpersuaded by that logic. And anyways, the ALJ's decision *did* list Plaintiff's mental health treatment, right in the section where she listed all the evidence that she considered as part of the RFC determination. (Doc. 7-2, #48). True,

[2] Plaintiff does seem to be arguing, albeit implicitly, that he disagrees with the ALJ's determination of his credibility. (Doc. 14, #1058–59). That does attack the medical evidence in a roundabout way because that evidence is what led the ALJ to disregard Plaintiff's testimony. But nowhere does Plaintiff provide a convincing argument for *why* the medical evidence fails to support the ALJ's decision.

the ALJ perhaps could have done a more thorough job explaining exactly how that specific factor played into calculating the RFC. But that alone does not establish that the ALJ failed to consider it at all. In sum, the Court finds that the ALJ did not fail to consider Plaintiff's mental health treatment, meaning no regulation was violated.

And as those are Plaintiff's sole objections to the Magistrate Judge's R&R, his challenge falls short.

## CONCLUSION

For these reasons, the Court **OVERRULES** Plaintiff's Objection (Doc. 17), **ADOPTS** the R&R (Doc. 16), and **AFFIRMS** the Commissioner's decision. The Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this matter from the docket.

**SO ORDERED.**

September 4, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**